## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **DAN LIU,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 20-704 (FYP)** |
| | ) | |
| **ALEJANDRO MAYORKAS,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Dan Liu, a successful fashion model who is a citizen of China, filed a petition with the United States Citizenship and Immigration Services ("USCIS") for an employment-based visa, based on her contention that she is an individual of "extraordinary ability." After USCIS denied her petition, Liu filed the instant suit against USCIS and associated government officials, arguing that the agency's decision was arbitrary and capricious under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.* Now before the Court are the parties' cross motions for summary judgment. For the reasons set forth below, the Court will grant Defendants' Motion for Summary Judgment and will deny Plaintiff's Cross Motion for Summary Judgment.

### BACKGROUND

The Immigration and Nationality Act allocates a certain number of visas for immigrants possessing "extraordinary ability in the sciences, arts, education, business, or athletics which has

been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation." *See* 8 U.S.C. § 1153(b)(1)(A)(i). This type of visa may be granted if "the alien seeks to enter the United States to continue work in the area of extraordinary ability," and "the alien's entry into the United States will substantially benefit prospectively the United States." *Id.* § 1153(b)(1)(A). The extraordinary-ability visa, commonly referred to as an EB-1 visa, has considerable advantages. Unlike other employment-based visas, the EB-1 visa is not dependent on an actual offer of employment in the United States; and it is exempt from a time-consuming labor certification process, which requires that employers first test the marketplace for existing qualified domestic workers. *Compare* 8 C.F.R. § 204.5(h)(5), *with id.* § 204.5(k)(4) (describing requirements for exceptional-ability petitions).

Given these substantial benefits, the extraordinary ability designation is "extremely restrictive by design." *Visinscaia v. Beers*, 4 F. Supp. 3d 126, 131 (D.D.C. 2013) (internal quotation marks omitted). EB-1 visas are "reserved for a very small percentage of prospective immigrants," *Hamal v. Dep't of Homeland Sec. (Hamal II)*, No. 19-cv-2534, 2021 WL 2338316, at *5 (D.D.C. June 8, 2021), and "courts have found that even highly accomplished individuals fail to win this designation." *Hamal v. Dep't of Homeland Sec. (Hamal I)*, No. 19-cv-2534, 2020 WL 2934954, at *1 (D.D.C. June 3, 2020) (citing *Kazarian v. USCIS*, 596 F.3d 1115, 1122 (9th Cir. 2010) (upholding denial of petition of a published theoretical physicist specializing in non-Einsteinian theories of gravitation); *Lee v. Ziglar*, 237 F. Supp. 2d 914, 918 (N.D. Ill. 2002) (finding that "arguably one of the most famous baseball players in Korean history" did not qualify for visa as a baseball coach)).

The statute requires an alien attempting to establish extraordinary ability to support her

claim with "extensive documentation."  *See* 8 U.S.C. § 1153(b)(1)(A)(i).  The applicable

regulation concerning "[a]liens with extraordinary ability" defines "extraordinary ability" as "a

level of expertise indicating that the individual is one of that small percentage who have risen to

the very top of the field of endeavor."  *See* 8 C.F.R. § 204.5(h)(2).  An alien seeking an EB-1

visa must submit "[i]nitial evidence" that the alien "has sustained national or international

acclaim and that his or her achievements have been recognized in the field of expertise."

*Id.* § 204.5(h)(3).  Such initial evidence may establish eligibility for the visa in either of two

ways.  The first requires "evidence of a one-time achievement (that is, a major, international

recognized award)."[1]  *Id.*  The second requires the submission of at least three out of ten

enumerated categories of evidence that demonstrate the petitioner's achievement in her field.

*See id.* § 204.5(h)(3)(i)–(x).[2]  If the ten enumerated categories of subsection (h)(3) "do not

---

[1]    "Receipt of the Nobel Prize is the quintessential example of a major award."  *Kazarian*, 596 F.3d at 1119 (citing H.R. Rep. No. 101–723 (I & II) (1990), *reprinted in* 1990 U.S.C.C.A.N. 6710, 6739).

[2]    8 C.F.R. 204.5(h)(3) provides:

(3)  Initial evidence.  A petition for an alien of extraordinary ability must be accompanied by evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise.  Such evidence shall include evidence of a one-time achievement (that is, a major, international recognized award), or at least three of the following:

(i)    Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

(ii)   Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

(iii)  Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought.  Such evidence shall include the title, date, and author of the material, and any necessary translation;

(iv)   Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

(v)    Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

readily apply to the [petitioner's] occupation, [she] may submit comparable evidence to establish" eligibility, under subsection (h)(4).  *Id.* § 204.5(h)(4).  After a petitioner submits initial evidence that satisfies the eligibility requirements, USCIS makes a separate determination of whether the proffered evidence sufficiently demonstrates extraordinary ability, such that it merits issuance of the EB-1 visa.  *Visinscaia*, 4 F. Supp. 3d at 131 ("[T]he [EB-1 visa] regulations set out a two-step test:  If the alien satisfies her initial evidentiary burden — that is, if she proves that she has met either of the requirements of § 204.5(h)(3) — USCIS must then decide, in a 'final merits determination' and weighing the documentation offered, whether the evidence demonstrates extraordinary ability." (citing *Kazarian*, 596 F.3d at 1120–21)).[3]

Liu petitioned USCIS for an EB-1 visa on April 18, 2019.  *See* ECF No. 17 (Certified Administrative Record ("A.R.")) 196–215.  She submitted evidence intended to satisfy three of the ten categories enumerated in subsection (h)(3):  (1) criterion one, "receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;" (2) criterion 3, "[p]ublished material . . . in professional or major trade publications or other major

---

(vi)   Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii)  Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix)   Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

(x)    Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

*See* 8 C.F.R. § 204.5(h)(3)(i)–(x).

[3]     "While the D.C. Circuit has not discussed the substance of this two-step approach, the method has been adopted by USCIS."  *Hamal I*, 2020 WL 2934954, at *1 (citing USCIS Policy Memorandum, *Evaluation of Evidence Submitted with Certain Form I-140 Petitions* (December 22, 2010); *Revisions to the Adjudicator's Field Manual (AFM) Ch. 22.2, AFM Update AD11-4* (2010)).  Liu disagrees that a second step is required in her case, arguing that "the evidence that she is eligible for an extraordinary ability visa is so overwhelming that a remand [to USCIS for further fact finding] is futile."  *See* ECF No. 14 (Plaintiff's Cross Motion and Opposition) at 20.

media;" and (3) criterion eight, "perform[ance] in a leading or critical role for organizations or establishments that have a distinguished reputation."  *See* A.R. 197; *see also* 8 C.F.R. § 204.5(h)(3)(i), (iii), (viii).  The dispute in this case concerns the sufficiency of the evidence that she submitted under criterion eight.

In support of criterion eight, Liu provided evidence of her role with Style International Management and MC2 Model Management, both modeling agencies with a global reach.  Liu submitted (1) a reference letter from Kim Chou, the Managing Director of Style International Management, *see* A.R. 458–59; (2) a reference letter from Jeff Fuller, the President of MC2 Model Management, *id.* at 570–71; (3) her contracts with Style International Management, *id.* at 205; (4) excerpts from the agencies' websites, *id.*; and (5) press about individuals represented by the agencies to demonstrate their distinguished reputations, *id.*  In her reference letter, Chou stated that Liu "performed in a critical role as a fashion model for Style International," representing the agency "24 hours a day."  *Id.* at 458.  Chou detailed the job of a model for the agency, especially emphasizing the "crucial moments when they are acting as a liaison between the agency and the brands" the agency works with.  *Id.* at 458–59.  Fuller made similar claims in his letter, noting that Liu "is one of the company's leading names" and highlighting her work on some of the agency's "most important advertising campaigns."  *Id.* at 570.

Liu also submitted materials labeled "Comparable Evidence; Evidence of published cover photos on distinguished modelling media."  *Id.* at 209–14.  This evidence included images of Liu on a wide range of magazine covers.  *Id.*  Liu, however, provided no explanation of how the "comparable evidence" supported her petition or how it related to the regulatory criteria.  *See id.*

Rather than grant Liu's initial petition, USCIS issued a Request for Evidence ("RFE") on

May 7, 2019. *Id.* at 9–13.  Although USCIS deemed Liu's evidence with respect to criteria one

and three sufficient, the agency determined that Liu had submitted insufficient evidence that she

"performed in a leading or critical role for organizations or establishments that have a

distinguished reputation," under criterion eight.  *Id.* at 11.  According to the agency, "[a] leading

role should be apparent by its position in the overall hierarchy of an organization or

establishment and the role's corresponding duties.  Similarly, a critical role is evidenced by its

overall influence on an organization or establishment."  *Id.*  USCIS specified that, for Liu, the

"key question [was] whether [her] role was leading or critical to an *entire* organization or

establishment, as opposed to a mere department or component within it."  *Id.* (emphasis in

original).  USCIS noted that "every model is valued by her agency," but that Liu "must submit

evidence that distinguishes [her] from the other models" at her agencies to satisfy the EB-1 visa

eligibility requirements.  *Id.*

     Although USCIS "conclude[d] that the record [did] not contain evidence that [Liu was]

responsible for an organization's or establishment's success or standing to a degree consistent

with the meaning of 'leading or critical role,'" *id.*, the agency gave her an opportunity to provide

additional evidence to make the required showing.  The RFE requested:

> - [L]etters from executive officers (e.g., CEO, president, vice
>   president) with personal knowledge of the significance of your
>   leading or critical role.
>   - The letters should contain detailed and probative
>     information which specifically addresses how your role for
>     an organization or establishment was leading or critical.
>     Details should include your specific tasks and
>     accomplishments as compared with those of others who are
>     employed in similar pursuits in the field of endeavor.
>     Evidence under this criterion must provide specifics relating
>     to how your role was leading or critical to an organization or
>     establishment *as a whole*.

*Id.* (emphasis in original).  USCIS also notified Liu that it "[could not] decipher the relevance" of all of her evidence and that it was her "responsibility to identify . . . significant passages and items that relate" to her and to her petition.  *Id.*[4]

On July 26, 2019, Liu submitted her response to the RFE, which included (1) an additional reference letter from Chou; and (2) an additional reference letter from Fuller.  She also resubmitted (3) her contracts with Style International Management; (4) excerpts from the agencies' websites; and (5) press about individuals represented by the agencies to demonstrate their distinguished reputations.  *Id.* at 14–20, 45–168.  Chou emphasized in her second letter that Liu was "critical to the organization of Style International Management as a whole," noting that "she was recruited upon the initial founding of [Style] to serve as one of only three Chinese models designated to extend [its] business into China."  *Id.* at 45.[5]  Chou also discussed a

---

[4]      The RFE states, "Finally, USCIS cannot decipher the relevance of the evidence in exhibit 4.  Note well that it is your responsibility to identify (highlight, underline, or mark) significant passages and items that relate to you." *See* A.R. 11–12.

[5]      Chou continued,

> We chose Ms. Dan Liu to open up the Chinese modelling market due to our confidence in her ability to gain [our] agency the initial momentum we needed to assert ourselves as one of China's premier modelling agencies, a business decision which proved to be correct given our internationally distinguished reputation today. . . .

> We were certain that Ms. Liu's reputation could give our firm the initial momentum necessary to be successful in the Chinese market.  She opened up the market for us and brought in new prestigious clients like Vogue China, Elle China, and L'Officiel China that sought out Ms. Liu specifically.  Moreover, in these shoots Ms. Liu modelled top fashion labels like Christian Dior, Salvatore Ferragamo, and Vivienne Westwood which brought us into contact with these labels' representatives and helped us secure future modelling shoots.  Ms. Dan Liu's critical role in our firm enabled us to earn our public reputation as an industry leader, the most important component of our ability to succeed as an agency.

*See* A.R. 45.

"supplementary indication" of Liu's critical role, namely that the agency had renewed her

contract three times, "an extremely uncommon practice in the modelling industry." *Id.* at 46.[6]  In

his second letter, Fuller stated that Liu "majorly increased MC2 Model Management's

international brand recognition, particularly in China," highlighting that Liu "brought [the]

agency the revenue [it] needed to succeed and flourish in the Chinese market." *Id.* at 167.[7]  In

her supplemental submission, Liu provided no further clarification regarding the materials that

---

[6]        According to Chou,

> [T]he reason our firm continually negotiates for her contract is because out of the
> many prominent fashion models our organization represents, Ms. Dan Liu is
> unique and critically valuable to our firm.  Many of our top clients single her out
> specifically for modelling shoots due to her unique attributes as a model, one of
> which is her eyes, popularly coined 'phoenix eyes.'  Ms. Liu's distinctive features
> lead her to be very popular in foreign countries and oftentimes distinguished
> international labels request that she serve as a model for their various campaigns
> due to her public recognition and past record of successful modeling shoots with
> other industry leaders.  Ms. Liu is known in the modelling industry as a model
> capable of successfully representing a brand's overall identity particularly well,
> taking on the persona of the campaigns she models for expertly.  This is a rare
> talent for a model to have and is very valuable to the brands she shoots with and
> is key for the sale of their products.  Accordingly, Ms. Liu has developed many
> connections with prestigious clients which brings a considerable amount of
> revenue to our agency, making her a critical asset to our organization.

*See* A.R. 46.

[7]        Fuller elaborated:

> When MC2 signed Ms. Liu to our model roster she had already earned a reputation
> as one of China's most accomplished models.  We knew that in order to attract
> other lucrative Chinese clients we needed to have at least one model in our agency
> who was already recognized as an industry icon able to serve as a symbol of
> MC2's ability to represent top Chinese models. . . .

> Achievements like [Liu's] foster any fashion agency's reputation as a leader and
> is critical to the success of the entire organization.  Some other examples of
> partnerships that Ms. Dan Liu created for our organization include Macy's,
> Nordstrom, and Guess.  Without her regular exposure of our agency to the leaders
> of the Chinese modelling industry, MC2 Model Management would not have as
> distinguished of a reputation in China.

*See* A.R. 167.

she previously had identified as comparable evidence. *See id.* at 14–20.

On August 9, 2019, USCIS concluded that Liu's evidence did not establish that she had served in a leading or critical role for either modeling organization; it therefore denied her petition. *Id.* at 1–4. In its decision, USCIS observed that the letters provided by Liu did not show that her "role was leading or critical to an entire organization or establishment *as a whole*." *Id.* at 3 (citing *Noroozi v. Napolitano*, 905 F. Supp. 2d 535, 545 (S.D.N.Y. 2012)) (emphasis in original). The agency clarified that Liu's letters "[did] not provide specific examples of how [Liu's] role rises to the level of critical," and noted that "[r]epeating the language of the statute or regulations does not satisfy the petitioner's burden of proof. *Id.* at 3 (citing *Fedin Bros. Co. v. Sava*, 724 F. Supp. 1103, 1108 (E.D.N.Y. 1989), *aff'd*, 905 F.2d 41 (2d Cir. 1990); *Avyr Assocs., Inc. v. Meissner*, No. 95-cv-10729, 1997 WL 188942, at *5 (S.D.N.Y. Apr. 18, 1997)). USCIS concluded that "every model is valued by her agency, or she would not remain under contract," but that Liu failed to demonstrate that she was "responsible for an organization's or establishment's success or standing" more broadly. *Id.* at 3–4. USCIS did not discuss Liu's "Comparable Evidence" in its decision. Because USCIS determined that Liu had not met the regulatory criteria to establish eligibility, the agency did not perform the second step of its two-step analysis, in which it would have determined whether Liu is one of that small percentage who have risen to the very top of her field of endeavor, or whether she has sustained acclaim. *Id.* at 4.

## LEGAL STANDARD

Liu relies on the APA, 5 U.S.C. § 701 *et seq.*, to challenge USCIS's denial of her visa application. Summary judgment is one mechanism for adjudicating claims under the APA. *See*

*Loma Linda Univ. Med. Ctr. v. Sebelius*, 684 F. Supp. 2d 42, 52 (D.D.C. 2010).  Due to the

limited role federal courts play in reviewing administrative decisions, however, the typical

Federal Rule 56 summary-judgment standard does not apply in such cases.  *Sierra Club v.*

*Mainella*, 459 F. Supp. 2d 76, 89–90 (D.D.C. 2006) (citing *Nat'l Wilderness Inst. v. Army Corps*

*of Eng'rs*, 2005 WL 691775, at *7 (D.D.C. 2005)).  Instead, "the function of the district court is

to determine whether or not . . . the evidence in the administrative record permitted the agency to

make the decision it did."  *Id.* (citation omitted).  Summary judgment thus serves as the

mechanism for deciding, as a matter of law, whether an agency action is supported by the

administrative record and otherwise consistent with the APA standard of review.  *Bloch v.*

*Powell*, 227 F. Supp. 2d 25, 31 (D.D.C. 2002) (citing *Fund for Animals v. Babbitt*, 903 F. Supp.

96, 105 (D.D.C. 1995)).

The APA "sets forth the full extent of judicial authority to review executive agency

action for procedural correctness."  *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513

(2009).  It requires courts to "hold unlawful and set aside agency action, findings, and

conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law."  *See* 5 U.S.C. § 706(2)(A).  Under this "narrow" standard of review, an

agency is required to "examine the relevant data and articulate a satisfactory explanation for its

action including a 'rational connection between the facts found and the choice made.'"  *Motor*

*Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43

(1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

Arbitrary and capricious review is "highly deferential" and "presumes the agency's

action to be valid."  *Defs. of Wildlife & Ctr. for Biological Diversity v. Jewell*, 815 F.3d 1, 9

10

(D.C. Cir. 2016) (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 997–98 (D.C. Cir. 2008)).  It is not enough, then, that the court would have come to a different conclusion from the agency.  *See State Farm*, 463 U.S. at 43.  The reviewing court "is not to substitute its judgment for that of the agency," *id.*, nor to "disturb the decision of an agency that has examine[d] the relevant data and articulate[d] . . . a rational connection between the facts found and the choice made." *Americans for Safe Access v. DEA*, 706 F.3d 438, 449 (D.C. Cir. 2013) (internal quotation marks and citation omitted).  A decision that is not fully explained, moreover, may be upheld "if the agency's path may reasonably be discerned."  *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974).  "[T]he party challenging an agency's action as arbitrary and capricious bears the burden of proof."  *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26, 37 (D.C. Cir. 1986).

## ANALYSIS

Defendants contend that they are entitled to summary judgment because USCIS considered all the evidence submitted by Liu and reasonably determined that she failed to establish eligibility for the highly restrictive EB-1 visa.  *See* ECF No. 13 (Defendants' Motion for Summary Judgment) at 9–10.  Defendants make three arguments: (1) that Liu failed to provide sufficient evidence to demonstrate that she "has performed in a leading or critical role for organizations or establishments that have a distinguished reputation," *see id.* at 10–14; (2) that USCIS's failure to discuss the comparable evidence that Liu submitted was not arbitrary and capricious, *see id.* at 15–16; and (3) that if the Court determines that Liu met her burden to present initial evidence, the Court should remand the matter to USCIS for final decision-making, *see id.* at 16.

In response, Liu argues that the agency decision rejecting her petition was contrary to the evidence in the record and that her submission clearly satisfied the eligibility requirements for obtaining an EB-1 visa. *See* ECF No. 14 (Plaintiff's Cross Motion and Opposition) at 8–16. More specifically, Liu contends that the agency inappropriately required her to show that her role was "leading or critical in respect to the entire organization as opposed to a department of component within it." *Id.* at 9. She further argues that USCIS erred in failing to consider the comparable evidence that she submitted. *Id.* at 16–20. Finally, she asserts that "the evidence that she is eligible for an extraordinary ability visa is so overwhelming that a remand is futile, and the Court would be justified in ordering USCIS to approve her petition." *Id.* at 20.

## I.   Evidence of Leading or Critical Role in an Organization

Liu first challenges USCIS's conclusion that she failed to satisfy criterion eight, which requires "[e]vidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation." *See* 8 C.F.R. § 204.5(h)(3)(viii); *see also* Pl. Cross Mot. at 8–16. In both its RFE and its decision denying Liu's petition, USCIS maintained that Liu failed to show that her "role was leading or critical to an *entire* organization or establishment, as opposed to a mere department or component within it." *See* A.R. 3, 11 (emphasis in originals). Defendants justify USCIS's decision by arguing, "the evidence shows that [Liu's] contributions were focused on the Chinese market, but the modeling agencies are global operations" and that "the record does not contain evidence of how [Liu's] position fits within the hierarchy of the two modeling agencies." *See* Defs. Mot. at 14. Defendants contend that "not 'every model who appears prominently in a print advertisement played a critical role for the company,'" *id.* (quoting *In re: WAC 98 070 52769* (USCIS Mar. 17, 2005)), and that "at

best" Liu demonstrated that her role "was leading or critical to the Chinese market portion of

MC2 Model Management, rather than to the global agency as a whole." *Id.*

Liu's counterargument is twofold:  She challenges USCIS's interpretation of the

applicable regulation, and the adequacy of the agency's explanation of its decision-making.

A.      Interpretation of the Regulation

Liu first contends that "[n]either the regulations, nor USCIS policy require that the role

be leading or critical in respect to the entire organization as opposed to a department [or]

component within it." *Id.* at 8–11.  Liu relies on a USCIS Policy Memorandum and a USCIS

Field Adjudicator's Policy Manual to argue that she was required only to demonstrate that she

"contributed in a way that is of significant importance to the outcome of the organization or

establishment's activities." *Id.* at 9–10 (quoting USCIS Policy Memorandum, *Evaluation of*

*Evidence Submitted with Certain Form I-140 Petitions* (December 22, 2010), at 10); *see also id.*

at 10 (quoting USCIS Adjudicator's Field Manual, Ch. 22.2).  She contends that her evidence

meets that standard,[8] and that USCIS "may [not] unilaterally impose novel substantive or

evidentiary requirements beyond those set forth at 8 C.F.R. § 204.5." *Id.* (quoting *Kazarian*, 596

F.3d at 1121) (alteration in original).

---

[8]       Notably, Liu's reliance on the language in the USCIS Policy Memorandum and Field Manual does not add much to the analysis.  The dispute over whether her contributions inured to the benefit of the "organizations or establishments as a whole" applies equally to the language used in those sources.  One can easily argue that her work in the Chinese market "contributed in a way that is of significant importance to the outcome" of only a component of the global modeling agencies that employ her, and not to the outcomes of those "organizations or establishments as a whole."  Further, "policy documents do not have the force of law," *Watervale Marine Co. v. Dep't of Homeland Sec.*, 55 F. Supp. 3d 124, 146 (D.D.C. 2014), and the USCIS Memorandum and Manual cited by Liu are not "independent source[s] of binding legal authority, *Broadgate Inc. v. USCIS*, 730 F. Supp. 2d 240, 246 (D.D.C. 2010) (explaining that the Adjudicator's Field "Manual's statement that '[p]olicy material is binding on all USCIS officers . . .' simply refers to the fact that an agency's interpretation of its own regulations is binding"); *see also Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) (noting that "policy statements, agency manuals, and enforcement guidelines" all "lack the force of law"); *Jolly v. Listerman*, 672 F.2d 935, 940–41 (D.C. Cir. 1982) (noting that "not every piece of paper emanating from" an agency is a binding rule, particularly where the language is more "informative" than "directive or mandatory" (citation omitted)).

Although Liu's interpretation of the applicable regulation is certainly plausible,
plausibility is not the standard of review.  Liu's contention that the regulation itself does not
require a leading or critical role with respect to an entire organization, as opposed to a
department or component within it, is belied by the words of the regulation itself:  Criterion eight
refers to "organizations or establishments" and not components of the same.  Although Liu
demonstrated important contributions to the components of her modeling agencies that handled
the Chinese market, USCIS concluded that her efforts were not critical enough to the overall
work of the "organizations or establishments," which are global in scope.  *See* A.R. 3–4, 11.
USCIS's interpretation is not precluded by the language of the regulation and is therefore
reasonable.  *See McGrady v. Mabus*, 635 F. Supp. 2d 6, 14 (D.D.C. 2009) ("If the agency's
interpretation is 'reasonable,' then it is entitled to deference." (citing *Sierra Club v. EPA*, 536
F.3d 673, 677 (D.C. Cir. 2008))); *Hosp. Bus. Servs., Inc. v. Jaddou*, No. 19-cv-0198, 2021 WL
4262653, at *5 (D.D.C. Sept. 20, 2021) ("USCIS's interpretation of its own regulation is
controlling unless plainly erroneous or inconsistent with the regulation." (internal quotation
marks and citation omitted)).

   2.  Adequacy of Final Decision

Liu next argues that USCIS's decision is "[u]nexplained and [c]ontrary to the [r]ecord."
*See* Pl. Cross Mot. at 8.  According to Liu, the denial makes only "a conclusory statement that
the evidence does not show Plaintiff's role was leading or critical," leaving her to "guess" why
the evidence was insufficient.  *Id.* at 11.  To make her case, Liu quotes extensively from the
letters provided with her application, which she claims are exactly "the type of evidence
specifically requested by Defendants in the RFE" and which demonstrate that "Plaintiff's value

14

is significantly more than other models, and that both of these organizations specifically targeted her to help them gain access to markets they were not presently in." *Id.* at 11–14.  In Liu's view, this evidence demonstrates her critical role in each agency and USCIS "offered no reason to discount" the evidence nor to conclude that her role was not critical.  *Id.*

In reviewing USCIS's decision, the Court determines whether USCIS considered the relevant factors and articulated a rational connection between the facts it found and the choice it made.  *See State Farm*, 463 U.S. at 43; *see also Hamal II*, 2021 WL 2338316, at *4 ("The agency's judgment must stand if it is rationally connected to the record.").  Here, USCIS's decision and its statements in the RFE demonstrate that it fully considered the evidence submitted by Liu when assessing whether she met the requirements of criterion eight.  *See* A.R. 3–4, 11–12.  First, the RFE demonstrates that USCIS reviewed all the evidence initially submitted by Liu.  USCIS stated in the RFE that the evidence satisfied the requirements of criteria one and three.  *Id.* at 11.  The agency expressly found, however, that the initial submission "[did] not contain evidence that [Liu was] responsible for an organization's or establishment's success or standing to a degree consistent with the meaning of 'leading or critical role.'"  *Id.*  Moreover, USCIS specifically noted that, for Liu, the "key question [was] whether [her] role was leading or critical to an *entire* organization or establishment, as opposed to a mere department or component within it."  *Id.* (emphasis in original).  USCIS also informed Liu of what she needed to submit to make the required showing under criterion eight:  Letters that contain "detailed and probative information," including "specific tasks and accomplishments as compared with those of others who are employed in similar pursuits in the field of endeavor," and "specifics relating to how [her] role was leading or critical to an organization or

establishment *as a whole*." *Id.* (emphasis in original).

    In addressing the concerns expressed in the RFE, Liu submitted only two additional letters from Chou and Fuller; the rest of her supplemental submission was duplicative of what the agency had already stated was insufficient, *compare id.* at 16–18, 49–109 *with id.* at 205.  In denying her petition, the agency focused on the additional reference letters, noting that "[t]he letters do not provide specific examples of how the petitioner's role rises to the level of critical." *Id.* at 3.  In particular, USCIS stated that "[e]vidence under [criterion eight] must provide specifics relating to how one's role was leading or critical to an organization or establishment *as a whole*." *Id.* (citing *Noroozi*, 905 F. Supp. 2d at 545) (emphasis in original).  USCIS also noted that the letters' repetition of the language of the statute did not suffice to carry Liu's burden.  *Id.* at 3.  The letters indeed include statements — *e.g.*, that Liu "is critical to the organization of Style International Management as a whole," *id.* at 45, and "Liu undoubtedly performed in a critical role for MC2 Model Management, *id.* at 167 — which parrot the language in criterion eight.  Liu may disagree with the agency's conclusion, and her position may be reasonable, but the Court's scope of review is "narrow," *MD Pharm., Inc. v. DEA*, 133 F.3d 8, 16 (D.C. Cir. 1998).  The record reflects that USCIS sufficiently tied its decision to evidence submitted by Liu.

    Liu highlights the "conclusory" nature of USCIS's denial and Defendants' attempts to paper over any inadequacies in USCIS's decision with arguments in their briefing.  *See* Pl. Mot. at 14–16.  In her view, Defendants are making *post hoc* "rationalizations that do not appear anywhere in the agency's decision." *Id.* at 14.  Liu is correct that whenever an agency denies "a written application, petition, or other request of an interested person made in connection with any agency proceeding," the agency must provide "a brief statement of the grounds for denial." *See*

5 U.S.C. § 555(e).  Further, a reviewing court "must judge the propriety of [agency] action solely by the grounds invoked by the agency."  *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).  The D.C. Circuit has held, however, that "nothing more than a 'brief statement' is necessary," and that "the core requirement is that the agency explain 'why it chose to do what it did.'"  *Tourus Recs., Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001) (quoting Henry J. Friendly, Chenery *Revisited: Reflections on Reversal and Remand of Administrative Orders*, 1969 Duke L.J. 199, 222).  Further, "[w]hile [the Court] may not supply a reasoned basis for the agency's action that the agency itself has not given, [it] will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."  *Bowman Transp.*, 419 U.S. at 285–86 (internal citations omitted).

Here, USCIS provided a brief statement explaining why it chose to deny Liu's petition. In its final decision, USCIS explained that Liu had failed to carry her burden under criterion eight, linking regulatory requirements with her evidentiary showing.  *See* A.R. 3–4.  The Court does not disagree that USCIS's explanation was "less than ideal," *see Bowman Transp.*, 419 U.S. at 286, and that the final decision should have spelled out that Liu was critical only to the components of her modeling agencies that handled the Chinese market.  Nonetheless, USCIS clearly stated "why it chose to do what it did" in its denial, *see Tourus Recs.*, 259 F.3d at 737 (citation omitted), and its path "may reasonably be discerned," *Bowman Transp.*, 419 U.S. at 286.

In the RFE, USCIS informed Liu that she was required to demonstrate that her role was "leading or critical to an *entire* organization or establishment, as opposed to a mere department or component within it," and that her initial submission of evidence was insufficient.  *See* A.R.

17

11 (emphasis in original).  Although the agency did not explicitly state that the evidence was insufficient because it established that Liu contributed primarily to the organizations' success in China, that shortcoming is readily inferred.  Liu's evidence plainly emphasized her role in the Chinese market, but other materials submitted to establish the prestige of the organizations indicate that they are global in scope.  *See id.* at 205–06 (noting that MC2 Model Management is "a talent agency with offices in New York City, Miami, and Tel Aviv" and that Style International Management "represents models from across Asia . . . [and] the United States and Europe"); *see also id.* at 167 (describing MC2 Model Management as "a leading international modelling agency").  In response to the RFE, Liu submitted more of the same type of evidence, focused on China; and the agency therefore concluded in its final decision that Liu did not show that her "role was leading or critical to an entire organization or establishment *as a whole*."  *Id.* at 3 (emphasis in original).  On this record, it is easy to discern why USCIS determined that Liu failed to meet the requirements of criterion eight.  USCIS's explanation is unquestionably brief, but the agency is not required to "write an exegesis on every contention," *Najmabadi v. Holder*, 597 F.3d 983, 990 (9th Cir. 2010) (citation omitted).  For that reason, Liu's arguments fail.

The record reflects that USCIS applied a permissible standard; and that it made a rational connection between the facts it found and its decision to deny Liu's petition.  Because USCIS considered all the evidence and provided reasoning connected to that evidence, the Court is constrained to uphold the agency's decision.  The denial of Liu's visa petition was not arbitrary or capricious.

II.     **Comparable Evidence**

Liu next argues that in addition to the evidence discussed above, she presented

"comparable evidence" under subsection (h)(4) that USCIS failed to evaluate.  *See* Pl. Cross

Mot. at 16–20.  Subsection 204.5(h)(4) provides that a petitioner may submit comparable

evidence to establish her eligibility if the standards in subsection 204.5(h)(3) "do not readily

apply to the [petitioner's] occupation."  *See* 8 C.F.R. § 204.5(h)(4).  Liu submitted "Comparable

Evidence" that she "has appeared on the cover of a number of top fashion magazines, as well as

evidence of the prestige and circulation of those magazines, and letters from top industry

professionals explaining the significance of being on the cover, and of her super model status and

extraordinary ability in general."  *See* Pl. Cross Mot. at 16–17 (citing A.R. 209–14).  In her

submission to USCIS, she described the evidence, but did not explain the applicability of

subsection (h)(4).  *See* A.R. 209–14.

Citing the clear requirements of subsection (h)(4), Defendants argue that a petitioner is

required to show "that the 8 C.F.R. § 204.5(h)(3) standards do not apply before comparable

evidence may be considered."  *See* ECF No. 15 (Defendants' Opposition and Reply) at 8–11

(citing 8 C.F.R. § 204.5(h)(4) ("If the above [(h)(3)] standards do not readily apply to the

beneficiary's occupation, the petitioner may submit comparable evidence to establish the

beneficiary's eligibility.")); Defs. Mot. at 15.  Because Liu did not make any showing that the

subsection (h)(3) criteria did not apply to her profession, Defendants contend that her

comparable evidence under subsection (h)(4) was not relevant.  *See* Defs. Mot. at 15; Defs. Opp.

at 9.  Although Liu disagrees that she bore the burden of establishing the applicability of

subsection (h)(4), the overwhelming weight of authority favors Defendants' position.  *See*

19

*Krasniqi v. Dibbins*, No. 20-cv-06188, 2021 WL 3910153, at *15 (D.N.J. Sept. 1, 2021) (holding

that petitioner "needed to first show that one of the (h)(3) criteria was not readily applicable");

*Zizi v. Cuccinelli*, No. 20-cv-07856, 2021 WL 2826713, at *8 (N.D. Cal. July 7, 2021) (holding

that "it is Plaintiff's burden to demonstrate that the standards in [(h)(3)] did not readily apply to

his occupation before USCIS is required to consider comparable evidence"); *Skokos v. Dep't of

Homeland Sec.*, No. 09-cv-00193, 2010 WL 11538054, at *5 (D. Nev. Jan. 13, 2010), *aff'd*, 420

F. App'x 712 (9th Cir. 2011) (holding that "it is up to the petitioner to argue before the agency

that he is entitled to the desired classification under § 204.5(h)(4) if he believes the standards set

forth in § 204.5(h)(3) do not apply to him"); *see also Guida v. Miller*, No. 20-cv-01471, 2021

WL 568850, at *9 (N.D. Cal. Feb. 16, 2021) (upholding agency decision where USCIS required

petitioner "to first show that none of the [(h)(3)] regulatory criteria applied to his field").

"In extraordinary-ability cases, the burden is on the petitioner to provide sufficient

evidence" that she meets the regulatory criteria set out in section 204.5(h).  *Visinscaia*, 4 F.

Supp. 3d at 132.  The Court therefore agrees with Defendants that Liu was obligated to

demonstrate that subsection (h)(4) was applicable to her case before her comparable evidence

could be considered.  Thus, Liu was required to show that the categories of evidence enumerated

in subsection (h)(3) do not "readily apply" to the modeling profession.  Absent such a showing,

her comparable evidence was not relevant and USCIS could properly decline to consider it.[9]

---

[9]     Liu argues that the regulations should be interpreted more permissively, and that she should not be required
to submit a separate petition based on comparable evidence under subsection (h)(4) after her petition under
subsection (h)(3) is rejected.  *See* Pl. Cross Mot. at 18–20.  But even a "permissive" reading of the regulation cannot
avoid the plain language of subsection (h)(4) that requires a showing about the applicability of the (h)(3) criteria.
Moreover, the Court sees no reason why Liu could not have made an alternative argument under subsection (h)(4),
in addition to the primary arguments that she made under subsection (h)(3), either in her initial petition or in her
supplemental response to the RFE.
       Liu also suggests that the agency was obligated to inform her in the RFE that she had not established the
relevance of her comparable evidence.  *Id.* at 18; ECF No. 16 (Plaintiff's Reply) at 5.  Yet the agency did, in fact,

Liu's final argument is that the significance of her evidence "was explained in the numerous expert support letters she provided."  *See* Pl. Cross Mot. at 17.  But none of those letters speak to whether the categories of subsection (h)(3) readily apply to the profession of modeling.[10]  Moreover, Liu's petition included submissions of evidence under three categories under subsection (h)(3), thereby conveying an assumption that the standards in subsection (h)(3) "readily apply to [her] occupation."  *See* 8 C.F.R. § 204.5(h)(4).  Because Liu neither explicitly nor implicitly made any showing that subsection (h)(4) was applicable to her petition, she was not entitled to consideration of her comparable evidence.[11]  Thus, USCIS's failure to discuss Liu's comparable evidence in its decision was not arbitrary or capricious.

---

note that it was unable to "decipher the relevance" of her evidence in Exhibit 4, which appears to include some of her comparable evidence.  *See* A.R. 11–12; *see also id.* at 210–14 (describing Liu's comparable evidence, including press from *The New York Times*, *Huffington Post*, *Washington Post*, *Los Angeles Times*, and *BBC* submitted as Exhibit 4.A and 4.B).  The agency went on to remind Liu that it was her "responsibility" to identify how her evidence was relevant.  *Id.* at 11–12.

[10]     The letters Liu references are by and large descriptions from fellow models of Liu's behavior on set at various photoshoots.  *See* A.R. 209–14.  For example, model Du Juan writes that "[g]roup shots can be very difficult" but that "[w]orking the shoot with Liu Dan was exceptional, and it was clear to [her] from the start that she was an experienced and talented model."  *Id.* at 210, 228.

[11]     Defendants assert that "USCIS did consider and credit the comparable evidence submitted, even if it was not individually addressed under the comparable evidence alternative criterion."  *See* Defs. Mot. at 15 (citing A.R. 203–13).  The agency "credited the evidence to support its finding that [Liu] met two of the three criteria she claimed."  *Id.* at 16.  Liu thus apparently benefited from the consideration of the comparable evidence, even though she failed to establish its relevance under the regulatory framework.

**CONCLUSION**

Although Liu has achieved great success throughout her career, the Court discerns no grounds to overturn USCIS's rational decision to deny her petition.  For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment and deny Plaintiff's Cross Motion.  A separate Order will issue this day.

_____
Florence Y. Pan
United States District Judge

Date:   November 30, 2021

22